**AMERICAN WOMEN BUYERS CLUB, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 74, Docket 28798.**

United States Court of Appeals Second Circuit.

Argued Oct. 14, 1964.

Decided Nov. 25, 1964.

Hess, Mela, Segall, Popkin & Guterman, New York City (Abraham S. Guterman, Alan Ditchik, New York City, of counsel), for plaintiff-appellant.

Robert M. Morgenthau, U. S. Atty., Southern District of New York (Arthur S. Olick, Asst. U. S. Atty., of counsel), for defendant-appellee.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

WATERMAN, Circuit Judge.

██ Taxpayer brought suit in the United States District Court for the Southern District of New York to recover $1,540.38 in federal income taxes it had paid for the calendar year 1961. Taxpayer contended that it was exempt from income taxation under 26 U.S.C. § 501(c) (4), as a "civic league[s] or organization[s] not organized for profit but operated exclusively for the promotion of social welfare * * *." The case was tried to the court without a jury and the trial judge dismissed the complaint after filing detailed findings of fact. He concluded in a written opinion that taxpayer was not a "civic league or organization," that it was not "operated * * * for the promotion of social welfare," and even if it were so operated it was not "exclusively" so operated. He found it unnecessary to decide whether taxpayer was "organized for profit." We agree with the judge below that taxpayer is not operated "exclusively" for the promotion of social welfare, and, this being sufficient to dispose of its claim for relief, we do not reach a review of the court's other conclusions.

The facts are undisputed. Taxpayer is a membership corporation made up of women buyers of ready-to-wear apparel and accessories. Admission to membership is limited to women under 45 years of age who have had at least three years' experience in the business and who are steady employees of good reputation. During 1961 the organization had 222 members, most of them residents of the New York City area. This membership comprised about 10% of all the women buyers of ready-to-wear attire in the New York City area, and each year approximately 15% of the applicants for membership are rejected for failure to meet the organization's standards.

Taxpayer's certificate of incorporation sets forth its purposes:

"(a) To promote the general good and welfare of Ready-To-Wear buyers throughout the country.

"(b) To promote, conduct and sponsor means of encouraging friendly and social intercourse among members of the Club, and

among members of the buying profession generally.

"(c) To assist in maintaining a spirit of cooperation not only among Ready-To-Wear buyers, but among their professional associates.

"(d) To give aid and assistance to its members in case of distress or bereavement, and to accumulate funds for that purpose.

"(e) Any benefits which shall be conferred upon the members by the organization, shall be wholly voluntary."

In 1961, a fairly typical year, taxpayer had a total income of $22,121.35, total expenditures of $14,022.71, and a net surplus of $8,098.64, which swelled the organization's accumulated surplus to $92,587.15. About 70% of taxpayer's income derives from advertisements in an annual journal which are paid for by manufacturers with whom the members do business. The journal is published in connection with a dinner dance to which the manufacturers are invited. Tickets to the dinner dance cover the cost of the affair itself. Other sources of income include membership dues and interest on investments.

In 1961, taxpayer spent $4,545.00 on sickness and unemployment benefits paid to its members according to schedules set forth in the organization's constitution. It also spent $807.37 for board and committee meetings, at which dinners were served; $1,782.00 for refreshments at ten membership meetings, where there were often lectures and discussions on trade topics; and $2,326.49 for the annual installation of officers, to a part of which the manufacturers with whom the members do business were invited. $200.00 was donated to charity. The remaining $4,361.85 was consumed by general expenses, which included the publication of a newsletter informing members of organizational activities and job openings, and the expenses of an employment committee whose business it is to seek and obtain positions for unemployed members.

Taxpayer argues that its system for the payment of sickness and unemployment benefits to its members promotes "social welfare" within the meaning of 26 U.S.C. § 501(c) (4). Assuming, arguendo, that this is so, do taxpayer's other activities recited above preclude a finding that taxpayer is operated "exclusively" for this purpose? A recent decision of this court, People's Educ. Camp Soc'y, Inc. v. Commissioner, 331 F.2d 923, 931 (2 Cir. 1964), cert. denied 85 S.Ct. 75 (U.S. Oct. 12, 1964), furnishes us with the legal standard to be applied:

"The word 'exclusively' as used in the statute has not been given a strict interpretation, so as to foreclose every operation for a nonexempt purpose no matter how insubstantial, but rather has been interpreted to mean 'primarily.' Debs Memorial Radio Fund, Inc. v. Commissioner, supra, 148 F.2d [948] at 952 [(2 Cir. 1945)]; * * *. Stated another way, 'the presence of a single * * * [non-exempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly * * * [exempt] purposes.' Better Business Bureau [of Washington] v. United States, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945)."

The district court's finding that taxpayer pursues substantial non-exempt purposes was supported by substantial proof. The membership meetings, the installation of officers, and perhaps even the board and committee meetings, which account for so high a proportion of the organization's expenditures, are to a considerable extent social functions. Many of the lectures and discussions at membership meetings, and part of the newsletter, are designed to enable presently employed members to earn more money. As taxpayer apparently concedes, opportunities for recreation and for vocational advancement, enjoyable solely by the membership of a tight little trade association, do not promote "social welfare" within the meaning of the statute. See

Rev.Rul. 63–190, —— Cum.Bull. ——. Compare Rev.Rul. 57–297, —— Cum.Bull. ——.

■ Taxpayer contends that these non-exempt activities are merely ancillary to its basic purpose of providing sickness and unemployment benefits for its membership. We disagree. The membership meetings may indeed help to keep the organization alive, but this is accomplished by providing substantial social and economic inducements to attendance. The installation of officers may serve in part as a build-up for the journal which is the organization's main source of income, but most of the expenses incurred are for the portion of the affair to which potential advertisers are not invited. Finally, even if the vocational services for presently employed members tend to keep them employed and thus to obviate their need to draw upon the unemployment fund, this remote connection with the organization's system for the payment of unemployment benefits, which taxpayer argues should qualify it for the exemption it seeks, is too tenuous to satisfy the requirements of the statute. Taxpayer's statement of purposes, set forth in its certificate of incorporation, confirms our conclusion that these are not merely ancillary activities.

Affirmed.