E. L. CORD, individually and doing business as Los Angeles Broadcasting Company, Appellant and Petitioner,

v.

Calvin J. SMITH, Appellee and Respondent.

No. 19416.

United States Court of Appeals Ninth Circuit.

Dec. 15, 1966.

Milo V. Olson, William K. Woodburn, Los Angeles, Cal., Edward D. Neuhoff, San Marino, Cal., for appellant.

Lyndol L. Young, Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

We have before us four motions, all relating to our decision of November 4, 1964, in the case of Cord v. Smith, 338 F.2d 516. They are (1) a motion by Cord for clarification of our mandate, (2) a motion by Cord that this court direct the dismissal of an action entitled Young v. Cord, (3) a motion by Smith and Attorney Young that we vacate our mandate and expunge our opinion, and (4) a motion by the same parties to dismiss the first two motions.

We first state the background of these motions. Our mandate was spread upon the records of the District Court on April 26, 1965. In compliance with the mandate, the case was transferred to Judge Whelan. On May 5, 1965 there came on for hearing a motion previously noticed by Cord for a protective order in connection with a deposition. On that morning Attorney Young filed in the case of Smith v. Cord a document entitled "Complaint on Assignment and Demand for Jury Trial." It names Young as "Co-plaintiff, Assignee." It refers to and incorporates Smith's complaint, and alleges that, on February 21, 1964, before

the action was filed, Smith assigned to Young one-half of his cause of action. The prayer is for one-half of the recovery. Young appeared at the hearing and announced that he was appearing in his own right, having filed the above "Complaint on Assignment." He also filed a "declaration" in which he asserted, among other things, that the mandate of this court is invalid because obtained by fraud. This document is not sworn to before a notary, but states that it is made "under penalty of perjury."[1]

At the hearing, the court made an order prohibiting Young from participating further as an attorney in accordance with our mandate. Cord then filed a motion to strike Young's "Complaint on Assignment," which came on for hearing on June 14, 1965. Young filed objections, in which, as in the "declaration" previously mentioned, he indulged in further invective of the type described in our previous opinion (see 338 F.2d at 521, 525). He also filed an affidavit in which he alleged that there was an oral assignment in October, 1963, affirmed by a written assignment on February 21, 1964. In his affidavit he states that he had had an arrangement with Smith for a 10% contingent fee, which was terminated in September, 1964. Smith filed an affidavit to the same effect. If there be a written assignment, it was not presented to the trial court, and we have not seen it. At the June 14 hearing, the court indicated that it believed, assuming that Young had a claim on his own behalf, that he should have asserted it in a separate lawsuit. Young indicated that he would file such a separate suit. The court then, "under those circumstances," granted Cord's motion to strike, "on that basis." The deposition of Smith, to be taken by Cord's counsel, was rescheduled for June 23, at the office of Cord's counsel.

On June 15, 1965, Young filed a separate complaint, action No. 65–889–E.C. in which he names himself as plaintiff and Cord as defendant. He there restates Smith's cause of action against Cord, alleges that he is the assignee of half of it, prays judgment accordingly, and demands a jury trial. The action was filed by Young in pro per. Pursuant to the so-called "low number" rule of the District Court, Judge Crary, to whom the case of Young v. Cord was assigned when it was filed, transferred the case to Judge Whelan.

At the deposition Smith appeared by Attorney West, and Young also appeared, claiming a right to be present as plaintiff in Young v. Cord, which, he said, had been consolidated with Smith v. Cord. In this he was in error. The case had been transferred to Judge Whelan, but not consolidated with Smith v. Cord. Olson, Cord's attorney, objected to Young's presence. Young asserted a right to be present, and West concurred with his views. It was then agreed between Olson and West that the deposition be continued until August 16, at the same place. Cord's attorney, Olson, was in the meantime to seek whatever relief he thought proper in relation to Young's further participation in the case. In a letter to West, written on the same day, Olson said that he intended to seek a protective order from Judge Whelan on August 9. This, however, was followed by two letters from Young, in which the validity of our mandate was again attacked, and in which Young indulged in further invective.

On July 8, Olson filed in this court the pending motion of Cord for clarification of our mandate. Cord's motion requested a stay. At the suggestion of this court, Judge Whelan stayed all proceedings for 60 days. On August 17, Smith and Young filed a joint response, Smith by Attorney West and Young in pro per. They requested that all matters be heard en banc, that the members of this panel be disqualified, that our prior decision be vacated and the opinion expunged, that Cord's motion be dismissed, and certain

---

1. Such a document is not a proper affidavit in a federal court. Hoston v. J. R. Watkins Co., 9 Cir., 1962, 300 F.2d 609, 870.

other relief. The moving papers were accompanied by affidavits of Judge Clarke, Young (three affidavits) and Smith. We do not detail the contents of these affidavits. In large part those of Young repeat the kind of villification of Olson and Cord that we commented on in our prior opinion. The filing of these papers and our granting of Attorney Olson's request for time in which to reply produced a further barrage of wires and letters from Young. On September 20, Cord's reply was filed. It denies any fraud on this court or on Judge Clarke and is accompanied by affidavits by Olson, Woodburn and Neuhoff, Cord's attorneys, and by Cord and Olson's secretary. They provoked another vituperative wire from Young, followed by another affidavit by Judge Clarke, in which he asks to be made a respondent and makes a vigorous personal attack on Attorney Olson. There followed affidavits by Murray, who was co-counsel for Smith and Young, Young, and Smith, and further letters and wires from Young and Judge Clarke. Because of all the charges that were being made, we issued a broad stay of all proceedings below.

All papers in the case were then submitted to all active judges of this court other than the members of this panel. They concluded, unanimously, that the asserted disqualification of the members of this panel is frivolous, and that none of the pending issues is of a kind which is appropriate for an en banc consideration. Thereafter, on March 3, 1966, we entered an order denying Smith's and Young's motions to disqualify us, granting Judge Clarke's request that he be made a respondent, denying Smith's and Young's request for a hearing en banc, and setting for hearing the motions now before us.

1. *The motions to vacate our mandate and expunge our opinion.*

a. *Jurisdiction.*

It is asserted that we acted without or in excess of jurisdiction. This ground is rejected. The argument is that we treated the papers on appeal as an application for an appropriate writ, but did not have the moving papers served on Judge Clarke as respondent. As our opinion shows, our treating the matter as an application for a writ was pursuant to Cord's request, the appealability of the order being in doubt, and the matter was heard on the merits on that basis. No objection to this procedure was then voiced by Smith or by Young. Having concluded that the order refusing to disqualify Young was not appealable, we proceeded to treat the matter as a proceeding under the All Writs Act, 28 U.S.C. § 1651.

The objection comes too late. We do not think that it goes to jurisdiction in any fundamental sense. Ordinarily, the filing of a notice of appeal brings the whole case to this court, and this court can then make such orders, directed to the court that tried the case, as may be proper.[2] Yet the trial court is not technically a party to the case on appeal. In form, a proceeding under the All Writs Act is different, in that the court is nominally a party to the proceeding. In substance, however, and almost universally in practice, the burden of the litigation is carried by the real parties in interest rather than by the respondent court, just as it was here.[3] All papers

2. Certainly this court had jurisdiction of the appeal while the question was pending as to whether the order was appealable. Cf. Ruby v. Secretary of the United States Navy, 9 Cir., 1966, 365 F.2d 385. That jurisdiction continued when we elected to treat the matter as an application for a writ. See Federal Trade Commission v. Dean Foods Co., 1966, 384 U.S. 597, 603–605, 86 S.Ct. 1738, 16 L.Ed.2d 802.

3. Neither the All Writs Act, 28 U.S.C. § 1651, nor the rules of this court prescribe any particular procedure, or require that the court, as distinguished from the real parties in interest, be served with papers. Compare Rule 20 of the proposed Federal Rules of Appellate Procedure, 34 F.R.D. at 294–295. It provides for service of papers on the judge and on the parties to the litigation. Subparagraph (b) clearly recognizes that the parties, not the judge, will normally carry on the case.

were served on Smith, through his counsel, Young, and both Smith and Young were fully represented and their position was considered on its merits.

■ Insofar as our mandate can be said to affect Judge Clarke, rather than Smith or Young, the procedural defect relied upon has now been cured. At his own request, Judge Clarke has been made a respondent. And, if there was ever a doubt as to whether he should have been permitted to hear any further proceedings in the case, that doubt has now been removed. In his affidavits he has taken the position of a litigant, aligned on the Smith-Young side of the case. Under those circumstances, it would certainly be improper for him to continue to act as a judge in the matter.[4]

b. *Fraud.*

In essence, the claim of Smith and Young, and of Judge Clarke, is that Cord's attorney Olson entered into an agreement with them that Olson would not appeal if the Judge refused to disqualify Young, that in reliance on the agreement Smith and Young refrained from presenting certain material testimony, and that as a result the case was presented to us on a record that did not speak the truth. Thus it is claimed that our decision was obtained by fraud and should be set aside.[5]

On this issue, numerous and detailed affidavits have been filed. The agreement is said to have been made at a conference in Judge Clarke's chambers, and its alleged terms are set out in detail in affidavits by Young and Judge Clarke, who are the only persons other than Olson who are said to have been present. The affidavits are long and detailed as to what is claimed to have been said by Olson. If he said what the affidavits say he said, he certainly was derelict in his duty to his client, was selling his client's position down the river, and was doing it behind the backs of his co-counsel, who were in the courtroom but, at his request, not included in the meeting. Olson's affidavit, and those of his co-counsel, flatly deny that such a meeting occurred, supporting the denials with considerable circumstantial detail. Olson also denies that any such agreement was made.

We deem it unnecessary to decide whether the alleged meeting occurred or whether, if it did occur, Olson agreed to what Young and Judge Clarke say he did. The meeting is said to have occurred on June 16, 1964, and the claimed agreement, if any was made, was breached on July 13, 1964, when Olson filed a notice of appeal on Cord's behalf. Obviously the fraud, if fraud there was, was known to Young and to Judge Clarke not later than July 13. Thereafter a veritable cascade of papers was filed in this court. The matter was argued on September 9, 1964, and decided on November 4, 1964. Yet there is not a word about the claimed fraud in any paper that was filed with us during that time. It seems quite remarkable to us that, if there had been such a fraud as is now claimed, it was not brought to our attention, and at once. It is particularly remarkable in this case because Young, in the papers that he did file, purported to be outraged at the whole proceeding. Yet his outrage did not extend to what he now claims was a gross fraud, perpetrated not only on himself and his client but also upon the trial judge and upon this court.

At oral argument, Young asserted that the fraud had been called to our attention. He referred to an affidavit made by himself and filed with us on August 12, 1964. The only language to which he could point is the following:

"This affidavit is filed to supplement the record of the hearing before the District Court on the motion of the petitioner Cord to disqualify plaintiff's attorney, and is in addition to the testimony of Lyndol L. Young at the hearing on said motion which has been

---

4. 28 U.S.C. § 455.

5. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 1944, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250.

transcribed and is on file with this Honorable Court. Affiant would have so testified at the hearing but counsel for Cord objected to testimony concerning the details of the Smith joint venture agreement. Tr. pp. 107 to 109; pp. 337 to 339."

Nothing in that language, or in the transcript to which it refers, even suggests that there had been such an agreement as is now asserted.

■■ While it is quite true that a court can always set aside a decision that was obtained from it by fraud, as is held in Hazel-Atlas Glass Co. v. Hartford-Empire Co., supra, n. 5, we know of no rule that permits a party, who knows the facts before the court acts, to withhold them, hoping to get a favorable decision on the merits, and then, when the decision is not favorable, to come back to the court and cry "fraud." That is what happened here. The claim of fraud was first made in the papers filed by Smith and Young on August 17, 1965, over a year after the notice of appeal was filed,

over nine months after our decision came down, and more than five months after the United States Supreme Court, on March 4, 1965, denied Smith's motion for leave to file a petition for a writ of prohibition or mandamus directed to this court. We are entitled to view the claim of fraud in the light of these facts, and to regard it with considerable skepticism.

Moreover, the alleged fraud does not go to the heart of the case—the question of whether Young acted as Cord's attorney at the time that the alleged Smith-Cord agreement was made. That question was fully explored. The testimony that Young and Smith say they would have given relates to whether Cord himself participated in making the claimed Smith-Cord agreement. That Young participated is nowhere denied.[6] Consequently it is not at all likely that the result would have been different if the testimony had been given.

The motions to vacate and expunge will be denied.

---

**6.** In Young's affidavit, filed with this court on August 17, 1965, the following appears: (reference is to the hearing on the motion to disqualify Young, which took place immediately following the claimed meeting between Olson, Young, and Judge Clarke)

"That Olson cross examined affiant about matters that were borderline to the making of the joint venture agreement, whereupon affiant stated that Cord made said agreement personally and directly himself with Smith, as well as through affiant as the president and general manager of the Broadcasting Company, and affiant denied that affiant made said agreement with Smith as Cord's attorney * * *."

An affidavit by Smith, filed on the same day, contains similar statements. In Young's affidavit filed with this court on August 12, 1964, the following appears:

"That affiant and Cord were both in Cord's office in Chicago during several conversations and discussions between them, and concluded that affiant should telephone Calvin J. Smith in Los Angeles and * * * offer Calvin J. Smith an agreement to become general manager and president of said Broadcasting Company when affiant retired

* * *. That affiant telephoned Calvin J. Smith in Los Angeles and discussed * * * an agreement with him whereby he would receive a salary of $250.00 per month and a profit sharing agreement for his services, whereby he would receive fifty percent of the net profits both from the earnings and the sale of said radio stations after Cord had been reimbursed for his full capital investment * * *. That Cord was present with affiant in Cord's office when said telephone conversation took place, and that similar general conversations between affiant and Calvin J. Smith had previously and subsequently occurred with the full knowledge and consent and approval of Cord * * *. That on July 13, 1933 Cord was involved in an accident which hospitalized him at the Good Samaritan Hospital in Los Angeles. That affiant visited with and talked to Cord during the time that he was a patient in said hospital and that Cord advised affiant * * * that affiant was to go ahead with the agreement with Calvin J. Smith and to start training him to succeed affiant as president and general manager of the Broadcasting Company upon the basis of the joint venture agreement."

2. *The motion to dismiss Cord's application.*

This motion is based on the fact that no final order relating to Young's claimed right to participate in pro per as an assignee was made by Judge Whelan. There is, however, a sharp disagreement between the parties as to whether our mandate would prevent Young from proceeding in the case as an assignee of Smith, and we think that, if the case is ever to get decided on its merits,[7] we should answer the question now presented to us.[8] The motion to dismiss will be denied.

3. *The motion for clarification of our mandate.*

■ We directed that the trial court "order that Lyndol L. Young, Esq. shall not at any time, directly or indirectly, and whether as attorney of record or not, represent, counsel or advise plaintiff Calvin J. Smith in connection with said action." [338 F.2d 526] This has been done. Would Young's participation as an assignee violate such an order? We think that it would. Young's claim rests upon the validity of the alleged Cord-Smith agreement. His major effort, therefore, as a party to the lawsuit, would have to be to show that such an agreement was made, was enforcible, and was breached.

He would also seek to show that he was in fact an assignee. Smith admits the assignment; Cord does not. In substance, then, Young would necessarily be doing, indirectly, the very thing that he is prohibited from doing—assisting Smith in pressing his suit. This is too easy a way to avoid the disqualification. We need not decide whether the assignment was made, or whether, if made, it is valid, as between Smith and Young.[9] We do hold that under our mandate, Young is not entitled to participate in the case in any manner, either as an attorney or as a party, or to maintain an action against Cord based upon the claimed assignment. And he may not, as we indicated in our prior opinion, assist Smith or his attorney by consultation or advice. The pending case of Young v. Cord should be dismissed.

The motions to vacate our mandate and expunge our opinion and to dismiss Cord's application for clarification of our mandate, are each denied. Our mandate is hereby clarified to further provide that the trial court shall dismiss the case of Young v. Cord, No. 65–889, and shall prohibit Young from participating as a party, either in pro per or otherwise, in the case of Smith v. Cord.[10] Our stay orders are modified to permit the District Court, other than Judge Clarke, to proceed to hear and dispose of the case of

7. What happened since our decision demonstrates that we were not in error in refusing to hold that the question there presented was moot. We then said:
"Young's attitude, both in the trial court and here, was not benign. It gives us little confidence that his withdrawal is complete for practical purposes, even though he is no longer counsel of record in the district court" (338 F.2d at 521).

8. Cf. Individual Drinking Cup Co. v. Public Service Cup Co., 2 Cir., 1919, 262 F. 410; Epstein v. Goldstein, 2 Cir., 1940, 110 F.2d 747. Our decision to proceed in this case is not to be taken as an indication that we will do so in other cases. On the contrary, the better procedure is for the parties to obtain a decision of the question in the trial court. Even then, we will not, in the usual case, grant relief when the order is interlocutory. We are moved to grant relief here only be-

cause of the exceptional nature of the question presented, the further delay that would otherwise occur, and the excessive heat that has already built up on the part of all parties to the case.

9. See, however, rules 4 and 5, Rules of Professional Conduct of the State Bar of California, following § 6076, West's Ann.Cal.Bus. & Prof.Code; Cal.Bus. & Prof.Code Sec. 6129, and Canons 6 and 10 of the Canons of Professional Ethics of the American Bar Association. We note that the assignment was never brought to our attention when the case was previously submitted to us.

10. At oral argument, Young indicated that he does not now desire to participate, either as a party or as an attorney. Presumably, therefore, the case of Smith v. Cord can now proceed to trial in due course.

Smith v. Cord, but in all other respects they are continued in effect.

CHAMBERS, Circuit Judge (concurring).

I concur in the foregoing opinion. I hope that the decision will permit Messrs. Smith and Cord to get on with their suit in the district court, but I am not sure it will.

If I were acting alone, I believe that I would resort to the extraordinary device of appointing an equity receiver to represent Mr. Young in court. This might restore dignity. As it is now, Mr. Young makes scattergun charges and opposing counsel over-reacts.