MUTUAL AID ASSOCIATION OF the
CHURCH OF THE BRETHREN,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 83–2546.

United States Court of Appeals,
Tenth Circuit.

April 11, 1985.

Leonard J. Henzke, Jr., Washington, D.C. (William J. Lehrfeld, Lehrfeld & Henzke, Washington, D.C., and Allan A. Hazlett, Topeka, Kan., with him on briefs), for plaintiff-appellant.

Robert A. Bernstein, Atty., Tax Div., Dept. of Justice (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Lisa A. Prager, Attys., Tax Div., Dept. of Justice, Washington, D.C., Benjamin Burgess, U.S. Atty., D. Kan., Wichita, Kan., with him on brief), for defendant-appellee.

Before LOGAN and SETH, Circuit Judges, and KANE, District Judge.*

LOGAN, Circuit Judge.

The only issue in this case that we decide on appeal is whether the district court correctly concluded that the Mutual Aid Association of the Church of the Brethren did not qualify as a tax-exempt social welfare organization pursuant to the Internal Revenue Code of 1954 (I.R.C.) § 501(c)(4), 578 F.Supp. 1451.[1] The parties stipulated the relevant facts. The trial court based its decision on cross motions for summary judgment by the parties.

Mutual Aid Association (MAA) is an unincorporated association which was organized in the nineteenth century by the Church of the Brethren. The organization provides insurance protection against fire, storms, vandalism, and other similar casualty losses on churches and buildings owned by individuals who pay for such coverage. The insurance coverage is available only to Church of the Brethren members and their dependents; if a member leaves the church the policy is cancelled. About 2,500 of the approximately 180,000 church members have insurance through MAA and about 350–400 of the approximately 2,800 policies insure church buildings.

MAA's income is derived from insurance premiums, investment of surplus funds, and a nominal lifetime membership fee paid upon application for a policy. A member of each congregation serves as the agent to accept policy applications and church officials serve as officers and directors of MAA. The pay for serving as an agent is nominal; the organization has only five

---

* Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation.

1. Because we hold that the Mutual Aid Association does not meet the requirements of I.R.C. § 501(c)(4), we do not address the government's argument that § 501(c)(15) is the exclusive exemption for mutual insurance companies. *See Consumer-Farmer Milk Cooperative, Inc. v. Com-* *missioner,* 186 F.2d 68, 72 (2d Cir.1950) (holding it unnecessary to decide whether a cooperative may claim exemption only under the specific cooperative exemption subsection because the cooperative failed to meet requirements of the more general social welfare exemption it sought), *cert. denied,* 341 U.S. 931, 71 S.Ct. 803, 95 L.Ed. 1360 (1951).

full-time employees. Risks above $25,000 are reinsured through Mennonite Indemnity, Inc., a stock company controlled in part by the central agency of the Mennonite Church in the United States. Because of its low overhead MAA's insurance rates are generally lower than those of other insurers, and it does not add a surcharge to its rates for institutions and individuals located in high-risk areas. MAA has in the past given a rebate to its policyholders; it also has reduced premiums when it had more than an adequate security margin for the reserve fund.

MAA has worked occasionally with a disaster aid agency of the church, the Brethren Disaster Service, which provides money, food, materials, and labor from voluntary church contributions to victims of natural and other disasters. MAA assists Brethren Disaster Service by publishing its newsletters, donating some telephone assistance, permitting use of its offices for meetings and workshops, and sometimes contributing cash.

From 1932 to 1958 the Internal Revenue Service considered MAA to be exempt from taxation as a "[f]armers' or other mutual hail, cyclone, casualty, or fire insurance" association under § 103(11) of the Revenue Act of 1932. From 1958 until 1972 MAA was considered tax exempt pursuant to I.R.C. § 501(c)(15) as a mutual insurance association, "other than life or marine," having a gross income of $75,000 or less (before 1963) or $150,000 or less (after 1972). After 1972, however, MAA's gross income each year exceeded $150,000 and it paid its taxes in accordance with the sections governing mutual insurance companies. After paying these taxes, MAA filed for and now claims entitlement to a refund for the years 1975 through 1980. MAA asserts that it is exempt as a social welfare organization under I.R.C. § 501(c)(4).

■ Our analysis must start from the proposition that exemptions from income tax are a matter of legislative grace. *Haswell v. United States*, 500 F.2d 1133, 1140 (Ct.Cl.1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *Erie Endowment v. United States*, 316 F.2d 151, 153 (3d Cir.1963). MAA carries on an activity that generates income, and hence is subject to tax on that income unless it satisfies one or more of the exemptions permitted in the tax code. *HCSC-Laundry v. United States*, 450 U.S. 1, 5, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981) (per curiam).

I.R.C. § 501(c)(4) requires that an organization be operated exclusively for the promotion of social welfare in order to qualify for an exemption. It is so operated "if it is primarily engaged in promoting in some way the common good...." Treas.Reg. § 1.501(c)(4)–1(a)(2)(i). MAA's argument under § 501(c)(4) is that it should be exempt because it promotes the social welfare in the sense that it advances the religious principles of the Church of the Brethren. MAA reasons that it carries out only the historical and doctrinal practice of mutual aid and that this practice is fundamental to the concepts of the Brethren Church. A traditional manifestation of the principle of mutual aid is the practice of "barn-raising" whereby church members join together to replace or repair members' buildings that have been destroyed by fire, tornadoes, or other peril. MAA claims that the insurance principle is the modern manifestation of the traditional barn-raising type of mutual aid.

MAA's argument for exempt status rests on its contention (1) that MAA exclusively or primarily advances religious principles, and (2) that advancing religion is a social welfare activity entitled to a § 501(c)(4) exemption. The second premise of MAA's argument is derived from regulations § 1.501(c)(4)–1(a) and § 1.501(c)(3)–1(d)(2).[2] MAA reasons that § 501(c)(3) precedents, defining charitable organizations, should apply to determinations of § 501(c)(4) sta-

**2.** Treas.Reg. § 1.501(c)(4)–1(a) reads:

> *"Civic organizations*—(1) *In general.* A civic league or organization may be exempt as an organization described in section 501(c)(4) if:
>
> (i) It is not organized or operated for profit; and
>
> (ii) It is operated exclusively for the promotion of social welfare.

tus for organizations promoting social welfare.

There is persuasive appeal in the second premise of MAA's argument. Organizations for the advancement of religion undoubtedly can work to better society. *See* Rev.Rul. 71–580, 1971–2 C.B. 235, 236. In *People's Educational Camp Society, Inc. v. Commissioner*, 331 F.2d 923, 930 (2d Cir.1964) (quoting *Debs Memorial Radio Fund, Inc. v. Commissioner*, 148 F.2d 948, 951 (2d Cir.1945)), *cert. denied*, 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964), the court said:

> "[We have] characterized the promotion of social welfare as involving the serving of 'purposes beneficial to the community as a whole,' or the promotion of the 'welfare of mankind' in the manner generally of the charitable, educational and religious organizations exempted by like provisions of the Code."

We need not decide this issue, however, because regardless of whether we accept MAA's premise that the advancement of religion promotes social welfare, we cannot characterize MAA as an organization dedicated exclusively or primarily to the advancement of religion.

Certainly MAA was formed and promoted by church members and limits its policy sales to church members.[3] But MAA does not give succor to souls; it sells insurance coverage. It is not supported by voluntary donations in whatever amounts the membership wishes to give; it extends benefits in return for a premium based generally upon the risk assumed. These facts distinguish our case from *Bethel Conservative Mennonite Church v. Commissioner*, 746 F.2d 388 (7th Cir.1984). In *Bethel* the Seventh Circuit held that a Mennonite church was organized and operated exclusively for religious purposes under § 501(c)(3) notwithstanding the fact that the church developed its own medical insurance plan for congregation members. *Id.* at 391–92. The medical insurance plan in *Bethel* was funded by "voluntary offerings made by members, plus interest earned on the portion of its funds kept in savings accounts." *Bethel Conservative Mennonite Church*, 80 T.C. 352, 356 (1983), *rev'd*, 746 F.2d at 393. The church in *Bethel* established this voluntary program as a part of its belief that its members must bear one another's burdens. *Bethel Conservative Mennonite Church*, 746 F.2d at 392 (quoting *Gal.* 6:2). Although MAA was formed with the same principles in mind, it operates as a mutual insurance company, not as a church congregation. It engages in underwriting practices consistent with those of the industry in general, requires premium payments, and pays on claims when it receives supporting documentation.

MAA's administrator, Dale Correll, testified that the purpose of taxpayer in providing protective fire and extended coverage property insurance was to further the Christian character of the Church of the

---

(2) *Promotion of Social welfare*—(i) *In general.* An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements. A 'social welfare' organization will qualify for exemption as a charitable organization if it falls within the definition of 'charitable' set forth in paragraph (d)(2) of § 1.501(c)(3)–1 and is not an 'action' organization as set forth in paragraph (c)(3) of § 1.501(c)(3)–1."

Treas.Reg. § 1.501(c)(3)–1(d)(2) provides (emphasis added):

"*Charitable defined.* The term 'charitable' is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax-exempt purposes which may fall within the broad outlines of 'charity' as developed by judicial decisions. Such term includes: Relief of the poor and distressed or of the underprivileged; advancement of religion; ... *and promotion of social welfare* by organizations designed to accomplish any of the above purposes...."

3. MAA also argues that it is exempt under § 501(c)(4) because it is an integral part of the Church of the Brethren. There is no doubt that MAA has close ties to the church and its teachings. This relationship, however, does not exempt MAA from tax liability, because regardless of MAA's ties to the church it is a legal entity separate and distinct from the church.

Brethren's religious beliefs. This purpose admittedly is admirable and both historically and religiously based. Nevertheless, MAA primarily provides property insurance, an admitted economic activity. MAA treats its surplus and profit as would any mutual insurance company: "[t]he ultimate considerations of [MAA] in creating and using its surplus and profit are to provide a reasonable and adequate security margin, and to provide better protection and service to its members." R. I, 257 (Suppl. Stipulation of Facts). The presence of a substantial non-exempt purpose—providing property insurance for its members on the basis of assessed premiums—precludes MAA's exempt status as an organization for the advancement of religion. *Fides Publishers Association v. United States,* 263 F.Supp. 924, 935 (N.D.Ind.1967) (§ 501(c)(3)). Such a purpose also precludes MAA's exempt status as an organization primarily engaged in the promotion of the social welfare. *See Contracting Plumbers Cooperative Restoration Corp. v. United States,* 488 F.2d 684, 686 (2d Cir.1973) (§ 501(c)(4)), *cert. denied,* 419 U.S. 827, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974).

AFFIRMED.