AMERICAN ASSOCIATION OF CHRIS-
TIAN SCHOOLS VOLUNTARY EM-
PLOYEES BENEFICIARY ASSOCIA-
TION WELFARE PLAN TRUST, etc.,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 84–T–371–E.

United States District Court,
M.D. Alabama, E.D.

March 27, 1987.

Leonard J. Henzke, Jr., William J. Lehrfeld, Lehrfeld & Henzke, P.C., Washington, D.C., and Thomas G. Mancuso, Kaufman, Rothfeder, Mancuso & Blitz, P.C., Montgomery, Ala., for plaintiffs.

John C. Bell, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., Curtis L. Muncy, Helen M. Lokey, Mark Muedeking, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

MYRON H. THOMPSON, District Judge.

## MEMORANDUM OPINION

The plaintiff in this lawsuit, a "welfare plan," seeks a refund of federal income taxes. The court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. § 1346(a).

In support of its claim for a tax refund, the welfare plan makes two contentions: first, that it is exempt by law from paying taxes; and, second, that, if it is not exempt, then it still has no taxable gross income. For reasons that follow, the court holds, on cross-motions for summary judgment, that neither of the plan's contentions has merit and that, thus, the plan is not entitled to a tax refund.[1]

## I.

The American Association of Christian Schools, Inc. is a tax-exempt association of fundamentalist Christian schools located in all 50 states; it was founded in the early

---

1. The parties have agreed that this cause may be resolved without trial and on cross-motions for summary judgment.

1970's and has over one thousand members. It is headed by a board of directors who were initially chosen from among the pastors of the churches affiliated with the member schools and who are thereafter replaced by a majority vote of the board. To be a member of the Association, a school must certify that it subscribes to the Association's "Statement of Faith," the basic religious principles of the Association.

In 1981, the Association established a "welfare plan" to provide health, disability, life, and other insurance benefits to the employees of member schools and the employees' beneficiaries. The board of directors of the Association chose the trustees of the welfare plan; and all of the trustees of the welfare plan, except the managing trustee, are members of the Association's board of directors. The welfare plan, which is called the American Association of Christian Schools Voluntary Employees Beneficiary Association Welfare Plan Trust, has now brought this lawsuit seeking a tax refund for fiscal years ending July 31, 1982, and July 31, 1983.

## II.

The welfare plan contends that it is exempt from paying federal income taxes under §§ 501(c)(3), 501(c)(4) or 501(c)(9) of Title 26, United States Code. The court will consider separately the claimed exemption under each section.

### A. Section 501(c)(3)

Under § 501(c)(3), entities "organized and operated exclusively for religious ... purposes" are exempt from paying federal income taxes. Therefore, to be exempt for religious purposes under this section, a corporation must be both *organized* and *operated* for such purposes. 26 C.F.R. § 1.501(c)(3)–1(a). The welfare plan here does not meet the operational test.[2]

 Under the operational test, the critical inquiry is whether an organization was operated exclusively for an exempt, religious purpose, with any possible non-exempt purpose being merely incidental, *Better Business Bureau v. United States,*

326 U.S. 279, 66 S.Ct. 112, 90 L.Ed. 67 (1945); for, the presence of even a single non-exempt purpose, if substantial, will destroy the exemption regardless of the number or importance of the exempt purposes. *Id.,* at 283, 66 S.Ct. at 114. Of course, in determining whether an organization's exclusive purposes are exempt or nonexempt, a court may focus on the manner in which the organization's activities are carried out; after all, an end can often be inferred from the means chosen. *Presbyterian and Reformed Publishing Co. v. Commissioner of Internal Revenue,* 743 F.2d 148, 155 (3rd Cir.1984).

Here, the welfare plan in essence sells insurance coverage. It operates on behalf of and in the manner of an insurance company as follows: the plan extends insurance benefits in return for premiums based generally on the risk assumed by the plan's selected insurance company; the plan's administrative staff then collects insurance premiums, maintains files concerning those insured under the plan, accepts claims, and even issues benefits based upon properly filed claims.

The welfare plan here is quite similar to the Mutual Aid Association of the Church of the Brethern (MAA), which the Tenth Circuit Court of Appeals found did not qualify for tax exempt status in *Mutual Aid Association of the Church of the Brethren v. United States,* 759 F.2d 792 (10th Cir.1985). Responding to the argument that the MAA exclusively or primarily advances religious principles, the appellate court wrote that

Certainly MAA was formed and promoted by church members and limits its policy sales to church members. But MAA does not give succor to souls; it sells insurance coverage. It is not supported by voluntary donations in whatever amounts the membership wishes to give; it extends benefits in return for a premium based generally upon the risk assumed.

*Id.,* at 795 (footnote omitted).

The welfare plan points, however, to *Bethel Conservative Mennonite Church v.*

---

2. Because the court has found that the welfare plan fails to meet the operational test, the court need not consider whether the plan meets the organizational test.

*Commissioner,* 746 F.2d 388 (7th Cir.1984). In *Bethel,* the Seventh Circuit found that a church was organized and operated exclusively for religious purposes under § 501(c)(3) even though the church operated its own insurance plan for congregation members. The welfare plan's reliance on *Bethel* is misplaced. It is critical that in *Bethel* the plan operated just as a church would, with the plan funded by offerings taken at church services and thus with each member's voluntary contributions or offerings to the plan not tied to the market value of the benefit received by the member. *Bethel Conservative Mennonite Church v. Commissioner,* 80 T.C. 352 (1983), *rev'd,* 746 F.2d 388 (7th Cir.1984). In contrast, here the welfare plan operates solely as an insurance business, with benefits directly tied to premiums or "voluntary contributions" paid either by employees of member schools or by the schools on behalf of their employees as part of the employees' employment benefits.

It appears that schools may participate in the welfare plan on a 'contributory' or 'noncontributory' basis. A contributory basis is where a school's employees make the required premium payments themselves. To participate on a contributory basis, at least 75% of the school's employees must agree to make the required payments. Under the contributory arrangement, the employees are therefore simply receiving insurance coverage in return for premium payments they made. A non-contributory basis, on the other hand, is where the school makes the required premium payments, and all employees are eligible for insurance coverage. Critical here is the fact that the employer is making the payments only for those who work for it and that the payments are therefore part of the employees' employment benefits. The premium payments are thus nothing but indirect salaries to the employees; the employees are simply receiving insurance coverage in return for premium payments with the payments being made by the employer in lieu, in part, of salaries.

This case therefore differs dramatically from *Bethel* where a member of the church could receive insurance coverage without having first entered into a contractual employee-employer relationship with the church; in *Bethel,* the church's payments of premiums on behalf of members was purely charitable.

Adopting similar reasoning, the Tenth Circuit in *Mutual Aid Association* distinguished *Bethel* from circumstances very similar to those presented here:

> The medical insurance plan in *Bethel* was funded by "voluntary offerings made by members, plus interest earned on the portion of its funds kept in savings accounts." *Bethel Conservative Mennonite Church,* 80 T.C. 352, 356 (1983), *rev'd,* 746 F.2d at 393. The church in *Bethel* established this voluntary program as a part of its belief that its members must bear one another's burdens. *Bethel Conservative Mennonite Church,* 746 F.2d at 392 (*quoting* Gal. 6:2). Although MAA was formed with the same principles in mind, it operates as a mutual insurance company, not as a church congregation. It engages in underwriting practices consistent with those of the industry in general, requires premium payments, and pays on claims when it receives supporting documentation.

*Mutual Aid Association,* 759 F.2d at 795.

■ For the above reasons, the court must conclude that, assuming the plan does operate for exempt religious purposes, the plan also operates for a substantial and significant nonexempt purpose: to provide insurance on the basis of premiums received. And the court must further conclude that, because of the presence of this substantial nonexempt purpose, the plan is not exempt under § 501(c)(3).

■ The welfare plan further argues that it is, nonetheless, entitled to § 501(c)(3) exemption because it is an integral part of the American Association of Christian Schools, Inc. Admittedly, the relationship between the plan and the Association should be considered by the court in determining whether the plan is entitled to § 501(c)(3) exemption; the relationship, however, does not entitle the plan to *per se* exemption. Where an organization seeking

exemption is separately incorporated and is thereby legally independent from an exempt corporation, the former has no derivative entitlement to exemption based purely on the exempt status of the latter. *Mutual Aid Association,* 759 F.2d at 795 n. 3.

Finally, the welfare plan correctly observes that a recent amendment to the Internal Revenue Code expresses legislative intent to exempt certain insurance plans administered by tax exempt religious organizations. The Tax Reform Act of 1984 adds a new section to the Internal Revenue Code. This section, § 501(m), exempts from federal income tax those insurance organizations that provide "retirement or welfare benefits (or both) by a church or a convention or association of churches ... for the employees ... of such church or convention or association of churches or the beneficiaries of such employees." The welfare plan contends that § 501(m) "explains earlier statutory provisions" and should therefore control this court's decision. The court cannot agree.

■ Statutes are not to be applied retrospectively absent clear and specific statutory language mandating such application. *Fordham v. Belcher Towing Co.,* 710 F.2d 709 (11th Cir.1983) (per curiam); *de Rodulfa v. U.S.,* 461 F.2d 1240, 1247 (D.C.Cir. 1972), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220. The legislative history of § 501(m) specifically states that the provision is effective "for taxable years beginning after December 31, 1985." H.R. Conf.Rep. No. 841, 99th Cong., 2d Sess, II–346 (1986), U.S.Code Cong. & Admin. News 1986, pp. 4075, 4434. Congress therefore did not intend that the new section be given retrospective application; and, for these same reasons, Congress did not intend the section to be a mere explanation of earlier tax provisions.

### B. Section 501(c)(4)

■ Section 501(c)(4) provides tax exemption for an organization operated exclusively for the promotion of social welfare; but, as with § 501(c)(3), the presence of a substantial non-exempt purpose precludes exemption under § 501(c)(4). *Mutual Aid Association,* 759 F.2d at 796.

Here, assuming that the welfare plan does promote social welfare, the court must nonetheless conclude that exemption under § 501(c)(4) is precluded. As demonstrated above, the plan has a substantial private, non-exempt purpose, pursued not in furtherance of any social welfare or public good. This purpose is to provide insurance in return for premiums based on the risk assumed. *See Mutual Aid Association, supra.*

### C. Section 501(c)(9)

■ The welfare plan claims that it is exempt from federal taxation because it is a voluntary employees' beneficiary association (VEBA) under § 501(c)(9). One of the requirements for a VEBA is that the organization must be controlled by either (1) its membership, (2) an independent trustee, such as a bank, or (3) trustees, at least some of whom are designated by, or on behalf of, the membership. 26 C.F.R. § 1.501(c)(9)–2(c)(3)(iii). The welfare plan contends that it satisfies these conditions. The court disagrees.

■ The control, either directly or indirectly, of the employees of the schools over the welfare plan is virtually non-existent. The trustees who control the plan are appointed by the board of directors of the Association. The Association's board is, in turn, self-perpetuating, with new members appointed by current members. Moreover, the Association's board was selected several years before the welfare plan was created.

The welfare plan correctly observes that the Association's board members must be selected from among the pastors of the churchs affiliated with member schools and that each pastor is chosen by his church congregation, which consist of the affiliated school's employees. This organizational structure, by itself, does not reflect the control necessary to satisfy § 501(c)(9). First, while all the Association's board members must be pastors of churches tied to member schools, neither the schools nor their employees choose which pastors are to serve on the board; rather, as stated,

current board members choose new board members. Second, while a school's employee has some "say" in who is chosen as pastor of the church with which his school is affiliated, the employee acts as a member of the church congregation, not as an employee, when he participates in the selection process; the employee simply participates along with all other members of the church congregation.

The welfare plan also correctly observes that the control requirement is met where an organization "is controlled by one or more trustees designated pursuant to a collective bargaining agreement (whether or not the bargaining agent of the represented employees bargained for and obtained the right to participate in selecting the trustees)." 26 C.F.R. § 1.501(c)(9)–2(c)(3)(iii). Here, the trustees of the welfare plan were not designated pursuant to a collective bargaining agreement, or any analogous agreement.

Finally, the welfare plan notes that the control requirement is met if an organization "is an 'employee welfare benefit plan', as defined in section 3(1) of the Employee Retirement Income Security Act of 1974 (ERISA), and, as such, is subject to the requirements of Parts 1 and 4 of Subtitle B, Title 1 of ERISA." 26 C.F.R. § 1.501(c)(9)–2(c)(3)(iii). The evidence now before the court fails to establish that the welfare plan here meets and is subject to ERISA's complex requirements, 29 U.S.C.A. §§ 1001, *et seq.*[3]

### III.

■ Finally, the welfare plan contends that, even if it is not exempt from federal income taxes, the funds it receives in the form of premiums from church schools and in the form of interest on those premiums invested by the plan, are not taxable gross income. *See* 26 U.S.C.A. § 61 (defining gross income). The plan argues, in essence, that it is a mere conduit between those paying premiums and the underwriting insurance company.

The court cannot agree with the plan's characterization of itself and its income. The plan is not merely a conduit. As the government correctly observed in its reply brief, the plan "invests contributions which it receives from the church-schools; it processes claims which employees make on the insurance companies; and it pays from bank accounts of insurance companies, insurance benefits when claims are made by employees."[4]

An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the plaintiff's motion for summary judgment is denied; and that the defendant's motion for summary judgment is granted;

(2) That judgment is entered in favor of the defendant and against the plaintiff; and that the plaintiff take nothing by its complaint; and

(3) That costs are taxed against the plaintiff, for which execution may issue.

---

**3.** Another requirement for a VEBA is that it not discriminate in favor of high paid employees and officers. 26 C.F.R. § 1.501(c)(9)–2(a)(2)(i). To provide a more complete disposition of this case, the court adds that it is convinced that the welfare plan here fails to meet this requirement.

**4.** The plan also contends that, if it has taxable income, it should be treated and taxed as a corporation rather than a trust. Since the plan raises this claim for the first time in this court and did not raise this claim previously before the Commissioner of the Internal Revenue Service at the administrative level, this court is without jurisdiction to consider the claim. *Sanders v. United States,* 564 F.Supp. 70, 75–76 (M.D.Ala.1983), *aff'd,* 740 F.2d 886 (11th Cir. 1984).