EL PASO DEL AGUILA ELDERLY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
El Paso Del Aguila Elderly v. Commissioner
Docket No. 12828-89X
United States Tax Court
T.C. Memo 1992-441; 1992 Tax Ct. Memo LEXIS 464; 64 T.C.M. (CCH) 376; August 4, 1992, Filed *464 Decision will be entered for respondent. P applied for tax exempt status under sec. 501(c)(3), I.R.C.Held, P has failed to provide sufficient information to permit the conclusion that it will operate exclusively in furtherance of exempt purposes. For Petitioner: David Riojas. For Respondent: Mary Kay James. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Petitioner seeks a declaratory judgment under section 7428(a) that it is exempt from Federal income tax under section 501(a) as an organization meeting the requirements of section 501(c)(3). (All section references are to sections of the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.) The case has been submitted on the basis of the administrative record. Petitioner has exhausted its administrative remedies. It received a final adverse determination letter dated April 25, 1989. By joint motion filed February 6, 1992, the parties submitted the case fully stipulated pursuant to Rule 122. Petitioner is duly incorporated pursuant to the provisions of the Texas Non-Profit Corporation Act. Its principal office at the time of filing the petition was in Eagle Pass, Texas. Petitioner's *465 Articles of Incorporation provide that petitioner's principal purpose is "to create a fund to help the elderly with funeral expenses. This corporation is organized and operated exclusively to consider and deal with the creation of the elderly funeral expense fund and other non-profit purposes, and no part of any net earnings shall inure to the benefit of any private member or shareholder." In Part III.3 of its Application for Recognition of Exemption Under Section 501(c) (3) of the Internal Revenue Code (Form 1023), petitioner described its activities in the following manner: The organization was formed to provide assistance to senior citizens primarily, to youth secondarily and the general public lastly. The organization has sponsored fashion shows, talent shows, dances and other recreational activities for senior citizens. Funds have been donated to Parks and Recreation of the City of Eagle Pass for equipment and funds to provide transportation for recreational trips. The main service programmed is to provide a group burial policy for all its members. [Emphasis added.] In Part II.2 of its Form 1023, petitioner described its fund-raising activities as dances, raffles, *466 plate lunches, and advertising. It also stated that it hoped to be able to conduct bingo. For the year ending December 1985, petitioner reported gross income from fund raisers of $ 24,132.49 and expenditures related to the fund raisers of $ 21,262.69. For the year ending December 1986, petitioner reported gross income from fund raisers of $ 22,908.20 and expenditures related to the fund raisers of $ 24,301.27. Petitioner's other sources of support and revenue, as reported on the Forms 1023, were: 1985
1986
Gross contributions, gifts, grants,
$    290.66
$    296.00
and similar amounts received
Gross dues and assessments of
752.50
7,500.30
members
Other expenses reported were:
Disbursements to or for benefit of
1,070.50
7,042.00
members (group burial policy)
Contributions, gifts, grants, and
--   1,368.11
similar amounts paid
None of the contributions, gifts, grants, etc., related to the group burial policy. Petitioner makes available to its members a low cost group burial insurance policy. Each member must pay a $ 1 per month membership fee. In addition, those wishing or able to participate in the group burial insurance policy must pay an *467 additional $ 4 per month. While the burial policy cost is a group policy cost, the fee is not set by petitioner at substantially below cost with petitioner making up the difference. Petitioner simply acts as a conduit to the insurance company for burial policy fee payments by its members. The group policy, group policy number F-0008 issued by Colonial Security Life Insurance Company of Dallas, Texas, is held by Memorial Funeral Chapels, Eagle Pass, Texas. Petitioner held its organizational meeting on September 25, 1984. Relevant bylaw provisions adopted at the meeting (translated from the original Spanish) provide: ARTICLE III OBJECTIVES: The objectives and purpose of the organization hereinafter called El Paso del Aguila Elderly is to organize a fund for burials and multiple benefits for senior citizens. Activities regarding health, education, welfare, nutrition and recreation of senior citizens will be the priority of the organization. ARTICLE IV MEMBERSHIP: People sixty (60) years or older and their spouses. Section 1 Application required Section 2 Good moral behavior Section 3 Age 60 does not apply to spouses Section 4 Monthly dues Section 5 Secretary *468 to advise of admission to organization Section 6 Disciplinary suspension may result for use of obscenity or drunkness. Section 7 Expulsion may result for immoral conduct, non-payment of dues for six consecutive months or conviction of a felony. Upon proof that any of these offenses have been committed by a member, he will be expelled. Section 5 of Article VII of the bylaws, relating to the election of officers, provides:
Section 5 Election of October 1984 open to all participants of Maverick County Elderly Nutrition Program registered with El Paso del Aguila Elderly. These are the founding members. Future elections decided by dues paying members. Section 501(c) (3) provides for the exemption of organizations that are organized and operated exclusively for religious, charitable, or educational purposes. In the final adverse determination letter, respondent ruled that: You are not operated as a charitable organization. The primary purpose and function of your organization is to provide burial insurance or policies to your members which are sold by Memorial Funeral Chapel of Eagle Pass, Texas. While some of your activities may be charitable endeavors, a substantial amount *469 of the activities are not. Based on the information submitted, you do not qualify for exemption as a charitable organization described in IRC 501(c) (3). On brief, respondent concedes that petitioner satisfies the requirement that it be organized for exempt purposes, and the only issue for decision is whether petitioner satisfies the requirement that it operate exclusively for exempt purposes. (3)-1 (3)-1 (3)-1 (3)-1 Section 1.501(c) (3)-1(c)(1), Income Tax Regs., provides that an organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3). The same regulation also provides that an organization will not satisfy the organizational test if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Respondent's position is that petitioner is not operated exclusively for exempt purposes and that petitioner is simply a membership organization furnishing its members burial policies at cost. Respondent argues that making insurance available at cost is not an exempt purpose, citing Mutual Aid Association of Church of the Brethren v. United States, 759 F.2d 792 (10th Cir. 1985). *470 Petitioner's position is perhaps best described in the following excerpt from a letter written by David Riojas of Texas Rural Legal Aid, Inc., to IRS Appeals Officer Jim Stevens on March 3, 1988: El Paso del Aguila Elderly presently consists of one hundred and ninety-three (193) dues-paying members. In pursuing its goal to provide a burial fund to reduce indigent burials and alleviate economic devastation to surviving family members it has set up a burial fund and provided a group burial policy to eligible participants. Of its one hundred and ninety-three (193) members, one hundred and one (101) are covered by the funeral policy, forty-two (42) are covered by the burial fund and fifty (50) are non-participants in either plan. The burial policy followed by the organization is to channel eligible participants under the pre-paid funeral policy, ineligible participants and indigent non-members under the burial fund and exclude non-indigent members from these benefits. The organization has served as a vehicle for establishing an expanded funeral service plan at a fixed rate and at low monthly payments. The organization is committed to pay the difference from the burial fund for *471 any participant of a burial policy that expires before he fulfills his contract. Furthermore, ineligible participants of the burial policy, which includes anyone over 75 years of age, are covered by the burial fund, which based on life expectancy and membership contribution; will require a majority contribution from the organization to meet the $ 1,000.00 benefit. The organization has already donated large sums to participants of the burial policy who have expired after making only minimal payments for the policy, as well as assistance to non-members. In an earlier letter to Mr. Edison Thayer, also of the Internal Revenue Service, Mr. Riojas had stated that: El Paso del Aguila Elderly was formed to address the problems encountered by senior citizens in the areas of health, education, welfare, nutrition and recreation. The initial goal of the organization is to alleviate the burden of funeral expenses among the elderly. The need to provide this assistance was crucial in Maverick County which is one of the poorest counties in the nation. The majority of the elderly in Maverick County are living on fixed incomes and well below the poverty guidelines established by the government. *472 The devastating effect of funeral costs on the elderly prompted the organization to direct their fundraising activities to provide a group burial plan at low cost to the participants. In her reply brief, respondent states that she agrees that providing for the special needs of the elderly is a charitable purpose where the elements of relief of distress and community benefit are present, citing Rev. Rul. 64-231, 1964-2 C.B. 139, and Rev. Rul. 61-72, 1961-1 C.B. 188. Furthermore, says respondent, she has acknowledged that the aged, apart from consideration of financial distress alone, are, as a class, highly susceptible to other forms of distress and that satisfying these needs can constitute a charitable activity, citing Rev. Rul. 79-18, 1979-1 C.B. 194; Rev. Rul. 75-198, 1975-1 C.B. 157; Rev. Rul. 72-124, 1972-1 C.B. 145. Respondent recognizes that where an organization provides goods and services to the members of a charitable class at substantially below cost or without regard to an individual's ability to pay, the organization is exempt, *473 citing Rev. Rul. 77-246, 1977-2 C.B. 190 (organization exempt that provided low cost transportation to senior citizens and handicapped persons); Rev. Rul. 76-244, 1976-1 C.B. 155 (organization exempt that provided home delivery of meals to the elderly or handicapped for a fee but which reduced charges for those unable to pay the full amount and did not discontinue the service if a person became unable to pay); and Rev. Rul. 75-385, 1975-2 C.B. 205 (organization exempt that operated rural rest home and, for nominal fees, admitted poor, elderly, individuals for 2-week stays). Petitioner has the burden of establishing that its operations will be exclusively in furtherance of exempt purposes. Rule 217(c)(2); Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488 (1977). The denial of exemption may be based solely upon the failure by an organization to provide information describing in adequate detail how the operational test will be met. See American Science Foundation v. Commissioner, T.C. Memo. 1986-556. The administrative record contains no evidence *474 that petitioner has taken any concrete steps to formalize the general objectives recited in Mr. Riojas's letter to Mr. Stevens. The letter speaks of a funeral policy, a burial policy, and contemplated assistance to ineligible participants and indigent nonmembers, and states that the organization is committed to paying the difference from the burial fund for any participant of a burial policy who "expires before he fulfills his contract." However, the administrative record contains no actual plan adopted by petitioner for creating the alleged burial and funeral funds, for financing them, for establishing criteria for eligibility for benefits, or for financing the creation and maintenance of the funds. Mr. Riojas's letter to Mr. Stevens stated that "The organization has already donated large sums to participants of the burial policy who have expired after making only minimal payments for the policy," but the financial data furnished in the Forms 1023 do not appear to support this representation. The administrative file does not reveal how much, if any, of the amounts shown as "Disbursements to or for benefit of members (group burial policy)" is other than premiums paid by the members *475 and disbursed to the insurance company. Benefits paid by a charitable organization must be disbursed in an objective and nondiscriminatory manner in order to constitute an activity in furtherance of an exempt purpose. La Verdad v. Commissioner, 82 T.C. 215, 220 (1984). Petitioner has failed to furnish any evidence on the basis of which we could reasonably infer that it will comply with the criteria of objective and nondiscriminatory disbursement. Mere statements of intent, such as those contained in Mr. Riojas's letter to Mr. Stevens and in the Forms 1023, are insufficient to meet petitioner's burden of proof. La Verdad v. Commissioner, supra at 221. Petitioner has accordingly failed failed to carry its burden of proving that it will operate exclusively in furtherance of exempt purposes within the meaning of section 510(c)(3), and we hold that respondent's denial of exempt status was reasonable. We need not discuss alternative grounds for denying exempt status, such as the possibility of private inurement of petitioner's activities. See Mutual Aid Association of Church of the Brethren v. United States, 759 F.2d 792 (10th Cir. 1985). *476 We conclude by noting that petitioner is still at liberty to develop an administrative record that would permit the conclusion, based upon facts in the record, that the organization will meet the necessary operational requirements for exemption. We would not be bound by principles of res judicata from reviewing a different petition based upon a new record. American Science Foundation v. Commissioner, supra.
Decision will be entered for respondent.