# United States Tax Court

T.C. Memo. 2025-102

MIRA VISTA HOMEOWNERS ASSOCIATION, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 14901-22X.             Filed October 6, 2025.

————

*John C. Knobelsdorf II*, for petitioner.

*Natasha V. Chevalier*, *Erika B. Cormier*, *Jeremy H. Fetter*, and *Marie E. Small*, for respondent.

## MEMORANDUM OPINION

WEILER, *Judge*: Respondent Commissioner of Internal Revenue (IRS) issued to petitioner, Mira Vista Homeowners Association, Inc. (Association), a notice of final adverse determination, dated April 6, 2022. *See* I.R.C. § 7428(a).[1] Respondent determined the Association does not qualify for an exemption from federal income tax under section 501(a) as an organization described in section 501(c)(4).[2] Petitioner seeks a declaration that the determination is in error. For the reasons

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The Association has presumably elected and qualifies under section 528 for preferable tax status; namely, the Association is generally exempt from income tax and subject to tax only to the extent of section 528. The issue here is whether the Association qualifies as a social welfare organization under section 501(c)(4).

[*2] below, we agree with respondent's determination that the Association does not qualify for exemption from federal income tax under section 501(a).

*Background*

The disposition of an action for declaratory judgment involving the initial qualification or classification of an exempt organization will ordinarily be based on the administrative record. Rule 217(a). This case was submitted without trial under Rule 122. The stipulated facts, which are derived from the administrative record of the Association's application for determination, are incorporated in our findings by this reference.

The Mira Vista development is a gated community consisting of approximately 700 acres, with 657 single-family homes and 2,000 residents in Fort Worth, Texas. The Association was organized as a nonprofit corporation under the laws of Texas on March 25, 1988. The specific and primary purpose of the Association is governing, improving, operating, and maintaining common areas within the Mira Vista development. These include 96 acres of greenbelts and sloping fences, 25 miles of privately maintained streets, nature trails, and a recreational facility consisting of a lake, restrooms, a fishing dock, a playground, and a picnic area.

The Association seeks to lessen the burdens of government through code enforcement, private security patrols, maintenance of signs, greenbelts and fences, road maintenance, and a 24-hour guard post facility, as well as cooperation with local government, including the City of Fort Worth, relating to water usage, garbage and recycling collections, streetlight maintenance, and other general access to the Mira Vista development.

All homeowners within the Mira Vista development are required to be members of the Association. The ownership of property within the Mira Vista development constitutes membership in the Association.

The Mira Vista Country Club (Country Club) is an unrelated member-owner country club, formed under section 501(c)(7), which owns and operates golf, tennis, swimming, and other recreational amenities and facilities. An individual need not reside in the Mira Vista development to be a member in the Country Club, and approximately 50% of the Country Club members are also members of the Association.

**[\*3]** The Association grants daily access to the members, guests, and employees of the Country Club. The Country Club hosts several annual charitable and community events including the Kathy Whitworth Invitational, the Dallas-Fort Worth Qualifier for the US Amateur Championship, the Texas State Amateur, the Southern Amateur Championship, the Texas State Mid-Amateur, the USGA Girls Junior Amateur Championship, the Legends Junior Tour's Collegiate Preview, and the Fort Worth Junior Girls Championship (collectively, charitable events).

By letter dated December 12, 2019, the Association submitted an application to the IRS seeking recognition as a tax-exempt organization under section 501(c)(4). The Association's application included completed IRS Form 1024–A, Application for Recognition of Exemption, attachments to the Application,[3] Form 8718, User Fee for Exempt Organization, and Form 2848, Power of Attorney.[4]

By letter dated February 2, 2021, the IRS denied the Association's application for recognition of exemption from federal income tax under section 501(a). The ten-page IRS letter determined that the Association did not qualify for exemption under section 501(c)(4) largely because the Association does not benefit the community on an unrestricted basis. The letter explained that the benefits in question were limited to those living within the gated community, which is accessible only to the members of the Association, their guests, and members of the unrelated Country Club.[5]

Gary Porter, a CPA acting on behalf of the Association, protested the conclusions of the IRS's February 2021 adverse determination letter and requested an appeal to the IRS Independent Office of Appeals (Appeals). In the appeal, he objected to the IRS's conclusion that the Association's activities do not qualify it as a social welfare organization under section 501(c)(4). Mr. Porter also contended that other gated

---

[3] The attachments for the Association included Articles of Incorporation, Bylaws, Declaration of Covenants, Conditions and Restrictions, Supplementary Declaration, Builders Fine Policy, other various policies, financial statements, tax returns, contracts for security and landscaping, reserve study, design guidelines for Mira Vista, and office lease.

[4] By letter dated February 15, 2021, the Association resubmitted its application to the IRS, again submitting IRS Form 1024–A along with attachments; however, this application was not signed by a representative of the Association.

[5] Petitioner concedes in its Simultaneous Reply Brief that the Association is "not a 'community' in and of itself."

[*4] homeowner associations within Texas are recognized by the IRS as section 501(c)(4) social welfare organizations, including Champion Forest Villas, Carlton Woods Association, Canyon Gate at the Brazos, Park Lake, Legends Ranch, and Westheimer Lakes.

By letter dated April 6, 2021, the IRS acknowledged receipt of Mr. Porter's February 2021 protest letter and advised that the information submitted was previously addressed in the proposed adverse determination letter of February 2, 2021, and that the case would be forwarded to Appeals.

Appeals Officer Daniel Frisch scheduled a telephone conference for August 10, 2021. By a two-page letter dated April 6, 2022, Mr. Frisch made a final adverse determination that the Association does not qualify for exemption from federal income tax under section 501(a). The letter does not indicate a specific requirement of section 501(a) that the Association failed to meet, but rather references "Section 501(c)[Subsection] of the Code."[6] The letter from Appeals gives the following reasons for the adverse determination: "Your organization does not promote the social welfare or provide a community benefit because it does not allow public access."

In response to the final adverse determination, the Association timely filed its Petition on July 5, 2022. By stipulation, the parties jointly submitted the administrative record. This case was calendared for trial at the Court's Dallas, Texas, trial session. Before trial, the Association filed a Motion for Leave to File or Enlarge the Administrative Record. A hearing on the Association's Motion for Leave was held during the Dallas trial session, and the Association's Motion for Leave was granted in part and denied in part.[7] By joint motion of the parties, which was granted at the hearing, the case was submitted for decision under Rule 122. On March 5, 2024, the Association submitted publicly available information relating to the six listed organizations as a First Supplement to Stipulation as to the Administrative Record (Supplement).

---

[6] It appears that the Appeals officer failed to fill in the specific paragraph within section 501(c) that the Association failed to meet.

[7] See the Court's February 21, 2024, Order for more detail and the relief granted to petitioner to supplement the record with publicly available information relating to six similarly situated organizations for the Court's judicial notice.

[*5]                        *Discussion*

I.      *Scope and Standard of Review*

As required by section 7428(b)(2), the Association exhausted its administrative remedies within the IRS before timely filing its Petition. Section 7428(a)(1)(E) confers jurisdiction on the Tax Court to make a declaration in a case of actual controversy involving a determination by the Commissioner with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(4) which is exempt from tax under section 501(a).

The scope of our review is limited to the Stipulated Administrative Record pursuant to Rule 217.[8] A taxpayer bears the burden of proving that the Commissioner's determination is incorrect. Rule 142(a); *Partners in Charity, Inc. v. Commissioner*, 141 T.C. 151, 162 (2013). The scope of our inquiry is "limited to the propriety of the reasons given by the Commissioner for denying an organization's application for exemption," rather than a de novo review of the administrative record. *IHC Health Plans, Inc. v. Commissioner*, T.C. Memo. 2001-246, slip op. at 29, *aff'd*, 325 F.3d 1188 (10th Cir. 2003). However, we have also said that "on good cause shown" we may go beyond the administrative record involving the initial qualification or classification of an exempt organization. *See* Rule 217(a); *RSW Enters., Inc. v. Commissioner*, 143 T.C. 401, 406 (2014); *Stepnowski v. Commissioner*, 124 T.C. 198, 205 (2005), *aff'd*, 456 F.3d 320 (3d Cir. 2006).

II.     *Legal Background*

Section 501(a) generally exempts from taxation an organization described in subsection (c)(4). To qualify as an organization described in section 501(c)(4), an entity must show that it is (1) a civic organization, (2) not organized for profit, and (3) operated exclusively for the promotion of social welfare. *See People's Educ. Camp Soc'y, Inc. v. Commissioner*, 331 F.2d 923, 929 (2d Cir. 1964), *aff'g* 39 T.C. 756 (1963); Treas. Reg. § 1.501(c)(4)-1(a)(1). Additionally, a qualifying organization

---

[8] *See Hous. Law. Referral Serv., Inc. v. Commissioner*, 69 T.C. 570, 577 (1978) ("To allow . . . facts not otherwise in the administrative record to be introduced in evidence by testimony or stipulation in a section 7428 declaratory judgment proceeding would convert that proceeding from a judicial review of administrative action to a trial de novo.").

[*6] must show that "no part of [its] net earnings . . . inures to the benefit of any private shareholder or individual." I.R.C. § 501(c)(4)(B).

Respondent does not disagree that the Association is a civic organization not established for profit. Rather, respondent argues that the Association does not operate exclusively for the promotion of social welfare. In fact, respondent asserts in his final determination that "[y]our organization does not promote the social welfare or provide a community benefit because it does not allow public access."

To determine whether the Association qualifies under section 501(c)(4)(A), we must determine whether the organization "*operated exclusively* for the promotion of social welfare." (Emphasis added.) Within the context of section 501(c)(3), the Supreme Court has held "operated exclusively" to mean that the presence of a single, substantial nonexempt purpose will preclude exempt status, regardless of the number or importance of exempt purposes. *See Better Bus. Bureau of Wash., D.C., Inc. v. United States*, 326 U.S. 279, 283 (1945).[9]

Regarding section 501(c)(4) organizations specifically, the U.S. Court of Appeals for the Fifth Circuit has adopted the Supreme Court's standard with respect to section 501(c)(3) organizations and held that a single substantial nonexempt purpose will preclude an organization's exemption from tax as a social welfare organization. *Mem'l Hermann Accountable Care Org. v. Commissioner*, 120 F.4th 215, 219–20 (5th Cir. 2024) (accepting the substantial nonexempt purpose test of *Better Business Bureau* and citing other appellate courts concluding the same, e.g., *People's Educ. Camp Soc'y, Inc. v. Commissioner*, 331 F.2d at 931; *Commissioner v. Lake Forest, Inc.*, 305 F.2d 814, 815, 820 (4th Cir. 1962), *rev'g and remanding* 36 T.C. 510 (1961); and *Mut. Aid Ass'n of Church of the Brethren v. United States*, 759 F.2d 792, 796 (10th Cir. 1985)), *aff'g* T.C. Memo. 2023-62.

The Fifth Circuit, and other courts of appeals, have further concluded that an organization operating primarily for the benefit of its members, rather than for the benefit of the community as a whole, is not an organization described by section 501(c)(4). *See Mem'l Hermann Accountable Care Org. v. Commissioner,* 120 F.4th at 221; *see also Contracting Plumbers Coop. Restoration Corp. v. United States*, 488 F.2d

---

[9] The Treasury regulations also provide that an organization will be found to operate exclusively for the promotion of social welfare "if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community." Treas. Reg. § 1.501(c)(4)-1(a)(2)(i).

**[\*7]** 684, 687 (2d Cir. 1973) (holding an organization that provides "substantial and different benefits to both the public and its private members" is not "'primarily' devoted to the common good" as required by section 501(c)(4)); *Commissioner v. Lake Forest, Inc.*, 305 F.2d at 818 (holding an organization that is "public-spirited but privately-devoted" may benefit the community incidentally but does not qualify as a section 501(c)(4) organization). While "the IRS has been something less than fully successful in establishing the precise limits of a Section 501(c)(4) exemption," the prevailing logic courts have embraced when addressing this matter is "that an organization that operates for the exclusive benefit of its members does not serve a 'community' as that term relates to the broader concept of social welfare." *Flat Top Lake Ass'n, Inc. v. United States*, 868 F.2d 108, 111 (4th Cir. 1989).[10]

III.    *Analysis*

The Association bears the burden of showing that it is entitled to an exemption. On the facts before us, we conclude that the Association has not met its burden.

The Association argues that public benefit, rather than public access or use, is the determining factor of a section 501(c)(4) exemption. The Association contends that it qualifies as a section 501(c)(4) organization because the general public receives a benefit through its efforts to benefit the residents and guests of the Mira Vista development. The Association claims these benefits arise from the existence of several facilities and services, including but not limited to a fishing lake, a dock, a playground, outdoor restrooms, physical access to events hosted by the Country Club, and a private patrol service. The fallacy within the Association's argument, however, is that the public benefits, if any, are incidental. The facilities above, namely the lake and the adjoining recreational venues, are primarily for the benefit of its members; and like the rest of the grounds they are not generally accessible to the public. In accordance with the Association's bylaws and rules, the gates are opened only for members, residents, and guests of each with the sole exception of those charitable events hosted by the Country Club. Even when the public is permitted entry to attend the Country Club's charitable events, however, the facilities listed are not a part of, nor are they intended for, those events.

---

[10] We recognize an organization may equally satisfy the requirements of section 501(c)(4) through public benefit and promotion of social welfare. *People's Educ. Camp Soc'y, Inc. v. Commissioner*, 331 F.2d at 930.

**[\*8]**   Thus follows another error within the Association's argument: The events and associated facilities are neither owned nor maintained by the Association but rather by the Country Club. Nor could these facilities be said to be for the benefit of the general public because, even if we were to attribute their use to the Association, as admitted by the Association, access to these locations by nonresidents, nonmembers, and nonguests is limited.

Setting aside the issue of public access, the benefits offered to the general public through the Association's private security patrols are similarly incidental as it has failed to articulate a way in which these services benefit the general public rather than the members of the Association or the Country Club.[11] The Association does put forth other actions claiming to lessen the burdens of government; namely, code enforcement, maintenance of roads, signs, greenbelts, etc., as well as cooperation with local government. The Association, however, fails to establish how its actions provide a tangible benefit to the general public—rather than its members—and otherwise lessen the burdens of government. After considering these actions undertaken by the Association, we find that they are principally undertaken for the benefit of its members and guests and offer only an incidental public benefit.

After careful consideration of the facts before us, we conclude that the Association's facilities are maintained for the benefit of its members and not used by the public. *See Mem'l Hermann Accountable Care Org. v. Commissioner*, 120 F.4th at 221–22. Equally, whatever the rights or privileges afforded to persons other than members, we find the Association's activities to be incidental and otherwise insubstantial to qualify as benefiting the community as a whole. *See id.*; *People's Educ. Camp Soc'y., Inc. v. Commissioner*, 331 F.2d at 930–31.[12]

---

[11] The homeowners' association in *Flat Top Lake* similarly restricted its membership to property owners within the Flat Top Lake subdivision and similarly maintained member-only restricted common areas behind a gated private road, constructed and maintained by the association. *Flat Top Lake*, 868 F.2d at 111. There the Fourth Circuit stated that while it was "unquestionably their right to do so, when a group of citizens elects . . . to separate themselves from society and to establish an entity that solely advances their own private interests, no potential for general social advancement is implicated." *Id.* at 112. We find the facts and circumstances of the Association to closely resemble those of *Flat Top Lake*.

[12] The size of a local population being served is not controlling; for a private project may touch an appreciable segment of the people or a large physical area and yet not be converted into a civic or social undertaking. *See Commissioner v. Lake Forest, Inc.*, 305 F.2d at 818.

**[\*9]** The Association also argues that "[t]here are numerous gated homeowner associations in Texas already recognized by the Internal Revenue Service as having tax-exempt status of a social welfare organization under 26 USC subsection 501(c)(4)." Respondent denied this claim "on the ground it is argumentative in nature and not a fact in the administrative record." The Supplement offered by the Association in response to respondent's argument does indicate IRS approval of other homeowner associations for section 501(c)(4) status—associations that, like the Association, operate within gated communities. In essence, the Association contends that the IRS is incorrectly or arbitrarily applying the law by granting tax exemptions to some but not all similarly situated homeowner associations in Texas (and potentially elsewhere).

The Supplement put forth does not present a complete picture of activities, is outside of the administrative record, and therefore should not be considered. In any event, and after taking judicial notice of the issues raised,[13] the recourse the Association seeks here is not well supported. The tax treatment of another taxpayer, analogous to the Association or not, cannot (and should not) be a deciding factor in this case because the Association must establish its own exemption qualifications. *See Easter House v. United States*, 12 Cl. Ct. 476, 487 (1987) (citing *Founding Church of Scientology v. United States*, 188 Ct. Cl. 490, 496 (1969)), *aff'd*, 846 F.2d 78 (Fed. Cir. 1988) (unpublished table decision).

IV.   *Conclusion*

We conclude the facilities and activities offered by the Association are primarily for the use and enjoyment of the Association's members and their invited guests. Accordingly, we hold the Association has not met its burden of showing that it is an organization described under section 501(c)(4).

In consideration of the foregoing, decision for respondent is appropriate. We have considered all arguments that the parties made, and to the extent they are not addressed herein, we consider them to be moot, irrelevant, or without merit.

---

[13] *See supra* note 7.

**[*10]**  To reflect the foregoing,

*Decision will be entered for respondent.*